**LANESBORO STATE BANK, Appellant,**

v.

**Robert G. HENNESSEY, et al.,
Respondents.**

**No. 81–693.**

Supreme Court of Minnesota.

March 26, 1982.

Holmes & Graven, David L. Graven and Larry M. Wertheim, Minneapolis, for appellant.

Streater, Murphy, Gernander & Beerling and Leo F. Murphy, Jr., Winona, for respondents.

TODD, Justice.

On July 12, 1977, Robert and Rita Hennessey sold certain property to Richard J. Johnson by contract for deed. Johnson subsequently placed a first mortgage with the Rushford Bank and second mortgage with the Lanesboro Bank on his vendee's interest and thereafter conveyed by quit claim deed and assignment of contract his vendee's interest to David Joerg, his attorney. The assignment and quit claim deed were recorded but a memorandum agreement executed by the parties at the time was not recorded. This memorandum agreement established that the conveyance was intended to be an equitable mortgage and not an absolute conveyance. Subsequently Johnson was petitioned into involuntary bankruptcy. There had been a foreclosure sale on the first mortgage at which Lanesboro purchased the property and it appeared that the one-year statutory period of redemption was about to expire when Hennesseys served a cancellation of contract for deed. Attorneys for Lanesboro notified Hennessey of the bankruptcy proceedings and the claimed equitable interest of the trustee. The affidavit of noncompliance was filed and Lanesboro State Bank, which had bid in at the first mortgage sale, commenced an action in state court seeking a determination that the cancellation was null and void.[1] The Hennesseys made a motion for summary judgment which was granted by the trial court on the basis that their service on Lanesboro Bank and Joerg of the notice of cancellation was all that was required since they were the only record owners of interest. The bank appeals this decision. We reverse the entry of summary judgment and remand.

The facts giving rise to this dispute are not in controversy. The execution of the contract for deed between Hennesseys and Johnson occurred on July 12, 1977. On April 21, 1978, Johnson gave the First National Bank of Rushford a first mortgage on his vendee's interest. On February 21, 1979, Johnson gave Lanesboro State Bank a second mortgage on his vendee's interest on three pieces of property, including the subject property. On May 26, 1979, Johnson assigned his vendee's interest in the contract to Joerg, his attorney, together with a quit claim deed, both of which documents were recorded. At the time of the execution of these documents, an agreement was signed between Johnson and Joerg which clearly establishes that the deeds and assignment, though absolute on their face, were actually equitable mortgages. Thereafter on January 3, 1979, Joerg filed an attorney's lien on the property to which he had been given an assignment and quit claim deed and on two other parcels of property owned by Johnson.

On December 19, 1979, the Rushford Bank held a foreclosure sale on its first mortgage and Lanesboro State Bank bid in the subject property and two other parcels of property. The redemption period from this sale was to expire on December 30, 1980. On August 1, 1980, the Lanesboro State Bank and other creditors filed a petition for involuntary bankruptcy proceedings against Johnson. On December 1, 1980, the payment of $20,000 came due upon the contract between Hennessey and Johnson and, when payment was not made, Hennesseys served a notice of cancellation of contract on the Lanesboro State Bank on December 3, 1980. On December 29, 1980, a

---

1. The bank also commenced proceedings in the bankruptcy court to declare the contract null and void and the bankruptcy court subsequently so held.

hearing was held before the Honorable Jacob Dim, bankruptcy judge, on the motion of the trustee in Johnson's bankruptcy estate, for a temporary restraining order and preliminary injunction under the bankruptcy rules seeking declaratory judgment staying the period of redemption. Named as defendants in that motion, among others, were Lanesboro State Bank, the First National Bank of Rushford and John Doe and Jane Doe. On December 30, 1980, the bankruptcy court ruled that the automatic stay provisions of the bankruptcy act tolled the running of the redemption period in a mortgage foreclosure sale at which Lanesboro was the purchaser.

On January 6, 1981, the attorney for the Lanesboro State Bank advised Hennesseys' attorney by letter, confirming an earlier phone conversation, that Johnson was in bankruptcy and that the bankruptcy court claimed an interest in the property. The bank took the position that the automatic stay provisions of the bankruptcy act precluded any further proceedings on the cancellation of the contract. The attorney for the Hennesseys rejected this claim on the grounds that the record disclosed no interest in Johnson and that they were not required to serve Johnson or the trustee. No service of cancellation was ever made upon the trustee or upon Johnson.

On January 14, 1981, the bankruptcy court issued its final order regarding the automatic stay provisions relating to the mortgage foreclosure sale of the Rushford Bank. By that order defendants, including Lanesboro State Bank, John Doe and Jane Doe were restrained and stayed from in any way in proceeding or from dealing with or against any of the property described in the attached exhibit which included the property subject to the notice of cancellation. On January 17, 1981, the 45-day period for redemption from the service of notice of cancellation on Lanesboro expired without any payment. On January 19, 1981, the Hennesseys served Joerg with a notice of cancellation. There never was any redemption from that notice. On January 22, 1981, the bankruptcy court lifted the stay against the running of the redemption period on the mortgage foreclosure sale and on January 26, 1981, the Lanesboro State Bank purchased from the bankruptcy trustee all of Johnson's statutory right to redeem from the foreclosure sale. On March 6, 1981, the Hennesseys filed the notice of cancellation of contract for deed and affidavit of failure to comply. The Lanesboro State Bank then brought this action to restrain any proceedings under the cancellation of the contract and at the same time commenced a similar proceedings in the bankruptcy court. The Lanesboro State Bank and Hennesseys each made motions for summary judgment. The trial court denied the motion of the Lanesboro State Bank and granted the motion of Hennesseys and ordered that their cancellation of the contract was effective. Appeal from this order was filed with this court. On August 11, 1981, the bankruptcy court ruled that the transaction between Johnson and his attorney created an equitable mortgage and that Johnson retained an interest in the property which passed to the bankruptcy trustee and under the act any cancellation proceedings were automatically stayed. The issue presented is:

Do the automatic stay provisions of the bankruptcy act apply to the equitable interests of a bankrupt which are not of record so as to preclude the trial court from proceeding with a cancellation action?

The new federal bankruptcy act became effective October 1, 1979. The new act was a comprehensive overhauling of the existing bankruptcy law. 28 U.S.C. § 1471 grants to the bankruptcy courts original and exclusive jurisdiction of all cases under title II and "original but not exclusive jurisdiction of all civil proceedings arising under title II or arising in or related to cases under title II." [2]

---

**2.** We do not attempt to construe the effect of the case of *Marathon Pipeline Company v. Northern Pipeline Construction Company*, 12 B.R. 946 (D.C.1981) which is presently on appeal to United States Supreme Court. In that case the federal district court held that the bankruptcy judge did not have broad delegation of authority to try all types of cases.

It is quite clear from the congressional record and treatises dealing with the new act that one of its primary purposes was to provide the debtor with a breathing spell from his creditors. One of the tools used to provide this breathing spell was the automatic stay provisions of 11 U.S.C. § 362. The regulations had previously incorporated references to automatic stays but this codification in the act was a new provision. A further purpose of the stay provision was to protect creditors from having to race to see who can salvage something from the bankrupt estate by obtaining preferential treatment. The provision is broad. All proceedings are stayed, including judicial proceedings and proceedings not before governmental tribunals. This would cover statutory remedies such as service of notice of cancellation of contract. Subsection (a)(3) of section 362 which stays any act to obtain possession of property of the estate of the bankrupt, allows the trustee an opportunity to familiarize himself with the various rights and interests involved and with the property available for distribution.

Hennesseys do not dispute these provisions of the bankruptcy act, but claim they are inapplicable because they are entitled to rely on the record title. The trial court so held. This position cannot be affirmed in light of the clear purpose of the bankruptcy act to automatically stay *all* proceedings against property in which the debtor might have a legal or equitable interest.

■ The record indicates that the Hennesseys had actual notice of the debtor's equitable interest prior to the expiration of the notice of cancellation when they were told by the attorney for Lanesboro that the bankruptcy trustee had a claim against the property. Once the debtor's interest came to light, the Hennesseys were required to proceed in accordance with the bankruptcy act. Their attempt to give notice of cancellation was void because of the automatic stay, and the state court was precluded from entering judgment.[3]

■ The automatic stay does not permanently affect the vendor's right to cancel but only temporarily halts the proceedings while the trustee determines the interests of the parties. The creditor may follow the procedures set out in section 362(d) to secure a lifting of the stay.[4] Under the automatic stay provisions the state court, while it had jurisdiction of the parties, was precluded from proceeding in determining any rights of the parties involving property which may be recoverable by the trustee in bankruptcy. *See In re Moore*, 5 B.R. 449 (Bkrtcy.Md.1980). Thus, we find no authority for the trial court to proceed to enter judgment in this case. The matter is further complicated by the fact that there were similar proceedings in the bankruptcy court.

We are satisfied that under the present status of the record the creditor Hennessey must either commence new cancellation proceedings with service upon not only the Lanesboro State Bank and Joerg, but also upon the trustee in bankruptcy as successor in interest to Johnson's equitable claims under the contract between Joerg and himself since Hennesseys had actual notice of the claim of the trustee, or have the stay lifted as to Joerg and Lanesboro and serve the trustee.

The entry of summary judgment for the respondents Hennessey is vacated and the matter remanded to the district court for

---

**3.** We need not for purposes of this decision consider the question of what the position of the trustee would be if there had been no actual notice of the bankruptcy proceedings. We note that the United States District Court recently held that although under state law a creditor who acts without notice of a partnership's equitable interest can acquire a superior lien, the bankruptcy code does not require that a creditor have notice before the automatic stay is effective and therefore the lien could not be created against the bankrupt partnership's property even where legal title did not reflect the equitable partnership interest. *In re Don/Mark Partnership*, 14 B.R. 830 (D.C.D. Colo.1981).

**4.** The creditor must apply to the bankruptcy court to have the stay lifted but the burden of proof is on the bankrupt to establish that the stay should be continued. *See* 2 Bankr.Serv. L.Ed. § 15:29 (1979).

further proceedings consistent with this opinion and with the federal bankruptcy act.

KELLEY, J., took no part in the consideration or decision of this case.