## UNITED STATES *v.* COE.

### APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

No. 591. Submitted October 9, 1894. — Decided October 29, 1894.

The provisions in the act of March 3, 1891, c. 539, 26 Stat. 854, " to establish a court of private land claims and to provide for the settlement of private land claims in certain States and Territories," authorizing this court to amend the proceedings of the court below, and to cause additional testimony to be taken, are not mandatory, but only empower the court to direct further proofs, and to amend the record, if in its judgment the case demands its interposition to that effect.

The judicial action of all inferior courts established by Congress may, in accordance with the Constitution, be subjected to the appellate jurisdiction of the Supreme Court of the United States.

An appeal lies to this court from a judgment of the Court of Private Land Claims over property in the Territories.

MOTION to dismiss for want of jurisdiction. The case was as follows:

On March 3, 1891, an act of Congress was approved, entitled "An act to establish a Court of Private Land Claims, and to provide for the settlement of private land claims in certain States and Territories." 26 Stat. 854, c. 539.

By the first section it was provided: " That there shall be, and hereby is, established a court to be called the Court of Private Land Claims, to consist of a Chief Justice and four Associate Justices, who shall be, when appointed, citizens and residents of some of the States of the United States, to be

appointed by the President, by and with the advice and consent of the Senate, to hold their offices for the term expiring on the thirty-first day of December, anno Domini eighteen hundred and ninety-five ; any three of whom shall constitute a quorum. Said court shall have and exercise jurisdiction in the hearing and decision of private land claims according to the provisions of this act."

Under section six it was made lawful " for any person or persons or corporation, or their legal representatives, claiming lands within the limits of the territory derived by the United States from the Republic of Mexico and now embraced within the Territories of New Mexico, Arizona, or Utah, or within the States of Nevada, Colorado, or Wyoming by virtue of any such Spanish or Mexican grant, concession, warrant, or survey as the United States are bound to recognize and confirm by virtue of the treaties of cession of said country by Mexico to the United States which at the date of the passage of this act have not been confirmed by act of Congress, or otherwise finally decided upon by lawful authority, and which are not already complete and perfect, in every such case to present a petition, in writing, to the said court in the State or Territory where said land is situated and where the said court holds its sessions, but cases arising in the States and Territories in which the court does not hold regular sessions may be instituted at such place as may be designated by the rules of the court."

Section seven provided : " That all proceedings subsequent to the filing of said petition shall be conducted as near as may be according to the practice of the courts of equity of the United States, except that the answer of the attorney of the United States shall not be required to be verified by his oath, and except that, as far as practicable, testimony shall be taken in court or before one of the justices thereof. The said court shall have full power and authority to hear and determine all questions arising in cases before it relative to the title to the land the subject of such case, the extent, location, and boundaries thereof, and other matters connected therewith fit and proper to be heard and determined, and by a final decree to settle and determine the question of the validity of the title

and the boundaries of the grant or claim presented for adjudi-
cation, according to the law of nations, the stipulations of the
treaty concluded between the United States and the Republic
of Mexico at the city of Guadalupe-Hidalgo, on the second day
of February, in the year of our Lord, eighteen hundred and
forty-eight, or the treaty concluded between the same powers
at the city of Mexico, on the thirtieth day of December, in the
year of our Lord, eighteen hundred and fifty-three, and the
laws and ordinances of the Government from which it is
alleged to have been derived, and all other questions properly
arising between the claimants or other parties in the case and
the United States, which decree shall in all cases refer to the
treaty, law, or ordinance under which such claim is confirmed
or rejected ; and in confirming any such claim, in whole or in
part, the court shall in its decree specify plainly the location,
boundaries, and area of the land the claim to which is so con-
firmed."

Under the eighth section, " any person or corporation claim-
ing lands in any of the States or Territories mentioned in this
act under a title derived from the Spanish or Mexican govern-
ment that was complete and perfect at the date when the
United States acquired sovereignty therein " was given the
right to apply to the court in the manner in the act provided
for other cases, for a confirmation of such title.

Section nine provided as follows : " That the party against
whom the court shall in any case decide — the United States,
in case of the confirmation of a claim in whole or in part, and
the claimant, in case of the rejection of a claim, in whole or
in part — shall have the right of appeal to the Supreme Court
of the United States, such appeal to be taken within six
months from date of such decision, and in all respects to be
taken in the same manner and upon the same conditions,
except in respect of the amount in controversy, as is now pro-
vided by law for the taking of appeals from decisions of the
Circuit Courts of the United States.  On any such appeal the
Supreme Court shall retry the cause, as well the issues of fact
as of law, and may cause testimony to be taken in addition
to that given in the court below, and may amend the record

of the proceedings below as truth and justice may require; and on such retrial and hearing every question shall be open, and the decision of the Supreme Court thereon shall be final and conclusive. Should no appeal be taken as aforesaid the decree of the court below shall be final and conclusive."

By paragraph five of section thirteen it was provided: "No proceeding, decree, or act under this act shall conclude or affect the private rights of persons as between each other, all of which rights shall be reserved and saved to the same effect as if this act had not been passed; but the proceedings, decrees, and acts herein provided for shall be conclusive of all rights as between the United States and all persons claiming any interest or right in such lands."

Section nineteen read thus: "That the powers and functions of the court established by this act shall cease and determine on the thirty-first day of December, eighteen hundred and ninety-five, and all papers, files, and records in the possession of said court belonging to any other public office of the United States shall be returned to such office, and all other papers, files, and records in the possession of or appertaining to said court shall be returned to and filed in the Department of the Interior."

The Court of Private Land Claims was accordingly duly organized and upon the pleadings and evidence in this case proceeded to a decree confirming a Mexican grant in favor of the appellee to land in the Territory of Arizona. An appeal having been duly prayed and allowed and the record having been filed in this court, a motion to dismiss the appeal for want of jurisdiction was submitted.

*Mr. E. M. Sanford*, *Mr. A. M. Stevenson*, and *Mr. S. L. Carpenter* for the motion.

I. Congress has no power to confer upon the Supreme Court jurisdiction to entertain an appeal from a decision of the Court of Private Land Claims, the latter tribunal not being vested with judicial power in virtue of any provision of the Constitution.

Former decisions of this court have clearly settled that there are but two classes of courts that may be created by Congress, in virtue of the powers granted it by the Constitution of the United States. They are defined as constitutional courts, or those created by virtue of section 1 of article 3 of the Constitution, and "legislative courts," or those created or authorized by Congress in virtue of the power granted by sub-division 2 of section 3, article 4, of the Constitution, " to make all needful rules and regulations respecting the territory or other property belonging to the United States."

As the act of March 3, 1891, 26 Stat. 854, establishing the Court of Private Land Claims, provides that the judges thereof shall hold their offices for a term expiring on the 31st day of December, 1895, it is clear that such tribunal is not a constitutional court. *American Insurance Co.* v. *356 Bales of Cotton*, 1 Pet. 511, 546; *Brenner* v. *Porter*, 9 How. 235, 242; *McAllister* v. *United States*, 141 U. S. 174.

That the Court of Private Land Claims does not fall within the class denominated " legislative courts " would seem to be equally clear, inasmuch as Congress derives its power to create such courts or to confer judicial power upon courts created by other legislative bodies solely from that provision of the Constitution hereinbefore referred to, empowering Congress to make rules and regulations respecting the territory belonging to the United States. *Cases cited supra; Clinton* v. *Englebrecht*, 13 Wall. 434, 447.

The purpose of the act creating the Court of Private Land Claims is, as stated in its title, " to provide for the settlement of private land claims in certain States and Territories." No jurisdiction is conferred upon the court by the act to administer the judicial power of the United States in respect of any of their territory or property. The matters committed to it by Congress for adjudication are such as might well have been determined by Congress itself without recourse to judicial agency, in carrying out, in good faith, the provisions of the treaties made with Mexico, by virtue of which the government acquired sovereignty over the territory in which these lands are situated.

As the Court of Private Land Claims is not a court in the sense of having been vested with the judicial power of the United States, it would seem to follow that Congress may not impose upon this court the exercise of appellate jurisdiction over its decisions. *Gordon* v. *United States*, 117 U. S. 697; *United States* v. *Ritchie*, 17 How. 525; *Hayburn's Case*, 2 Dall. 409; *United States* v. *Ferreira*, 13 How. 40; *In re Sanborn*, 148 U. S. 222; *Grisar* v. *McDowell*, 6 Wall. 363; *Interstate Commerce Commission* v. *Brimson*, 154 U. S. 447.

II. But should the court be of the opinion that the Court of Private Land Claims is a tribunal administering the judicial power of the United States, and thus a part of its judicial system from which an appeal may be prosecuted to the Supreme Court, then we contend that in prescribing the mode of procedure in this court upon such appeal Congress has transcended its powers and thus rendered nugatory the clause in the act granting the right of appeal.

By section 9 of the act creating the court it is provided as follows : " On any such appeal the Supreme Court shall retry the cause, as well the issues of fact as of law, and may cause testimony to be taken in addition to that given in the court below and may amend the record of the proceedings below as truth and justice may require ; and on such retrial and rehearing every question shall be open and the decision of the Supreme Court thereon shall be final and conclusive." It is clear from an examination of sub-divisions 1 and 2 of section 2, article 3, of the Constitution of the United States, that as to such decree as may be rendered in controversies of this kind the jurisdiction of the Supreme Court of the United States is appellate only. Any act of Congress requiring the Supreme Court to take original jurisdiction of such a matter would be unconstitutional and void.

But the section of the act creating the Court of Private Land Claims, above referred to, requires the Supreme Court practically to try the cause the same as if it had originated in that court. It shall *retry* the cause, and on such retrial "*every question shall be open.*" The requirement that it shall retry the cause upon the issues of fact and of law probably would

not be obnoxious to its appellate jurisdiction if such retrial were limited to the record as it was made in the lower court; but when there is added to this the requirement that the court shall cause additional testimony to be taken, (for a proper showing having been made, this provision is undoubtedly mandatory,) and that it shall rehear and redetermine every question that may arise in the case the same as if it had not been litigated in the court below, a burden is imposed upon the Supreme Court of the United States not contemplated by the Constitution. The Congress of the United States cannot indirectly place a burden upon this court that cannot be directly imposed under the Constitution. *Wiscart* v. *D'Auchy,* 3 Dall. 321; *United States* v. *Ritchie,* 17 How. 525; *Grisar* v. *McDowell,* 6 Wall. 363.

"It is the essential criterion of appellate jurisdiction that it revises and corrects the proceedings in a cause already instituted and does not create that cause." *Marbury* v. *Madison,* 1 Cranch, 137, 175.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The motion to dismiss rests upon two grounds: 1. That the Congress had no power to confer upon this court jurisdiction to entertain an appeal from the decree of the Court of Private Land Claims because the latter is not vested with judicial power in virtue of any provision of the Constitution. 2. That if this be not so, nevertheless the act creating that court, in prescribing the course of procedure upon appeal, imposed upon this court the exercise of original jurisdiction contrary to the provisions of the Constitution, and that therefore no appeal would lie.

The second of these grounds does not appear to us to afford any support to appellee's contention. This is not one of the cases within the original jurisdiction of this court, and if it be one of those in respect of which the court has appellate jurisdiction, that jurisdiction exists "both as to law and fact, with such exceptions, and under such regulations as the Congress shall make."

If the paragraph in the ninth section of the act providing that this court shall retry causes coming up on appeal, "as well the issues of fact as of law, and may cause testimony to be taken in addition to that given in the court below, and may amend the record of the proceedings below as truth and justice may require; and on such retrial and hearing every question shall be open," were obnoxious to the objection that in whole or in part it was not such a regulation as the Congress had power to enact, then the section would to that extent be invalid, but this would not take away the right of appeal itself, nor could the question of such invalidity arise except when particular action was asked under the clause.

We understand the suggestion as made to relate to the authority to allow further proofs or the record to be amended. Causes in the Court of Private Land Claims are in effect equity causes and brought to this court by appeal, and, as observed by Chief Justice Ellsworth, in *Wiscart* v. *D'Auchy,* 3 Dall. 321, " an appeal is a process of civil law origin and removes a cause entirely ; subjecting the fact, as well as the law, to a review and retrial ; but a writ of error is a process of common law and it removes nothing for examination but the law."

The remedy by appeal in its original sense was confined to causes in equity, ecclesiastical, and admiralty jurisdiction. Undoubtedly appellate courts proceeding according to the course of the civil law may allow parties to introduce new allegations and further proofs, and such has been the settled practice of the ecclesiastical courts in England and of the admiralty courts in this country. Nevertheless, orders allowing this to be done are not granted as matter of course, but made with extreme caution, and only on satisfactory grounds. As to appeals to this court from the decrees of Circuit Courts in equity causes, it was provided by the second section of the act of Congress of March 3, 1803, c. 40, 2 Stat. 244, carried forward into section 698 of the Revised Statutes, which was the first enactment giving the remedy by appeal, "that no new evidence shall be received in the said court, on the hearing of such appeal, except in admiralty and prize causes." *Holmes* v. *Trout,* 7 Pet. 171 ; *Mitchel* v. *United States,* 9 Pet.

711; *Boone* v. *Chiles*, 10 Pet. 177; *Blease* v. *Garlington*, 92 U. S. 1. And in respect of the allowance of amendments, when the ends of justice require it, the course has been to remand the cause with directions. *Wiggins Ferry Co.* v. *Ohio & Mississippi Railway*, 142 U. S. 396, and cases cited.

Under what circumstances and to what extent the power to amend the record of the proceedings below under this act, or to cause additional testimony to be taken, was intended to be exercised, we are not now called on to consider. The statute is not mandatory, but empowers the court to direct further proofs and to amend the record if in its judgment the case demands its interposition to that effect, and, as the question is one of power merely, and not properly arising for determination on this motion, we need not prolong these observations.

The principal ground relied on by appellee is that the Court of Private Land Claims is not a tribunal vested with judicial power in virtue of any provision of the Constitution, and, therefore, the Congress had no power to confer upon this court jurisdiction to entertain appeals from its decisions.

By article 8 of the treaty of Guadalupe-Hidalgo and article 5 of the Gadsden treaty, the property of Mexicans within the territory ceded by Mexico to the United States was to be "inviolably respected," and they and their heirs and grantees were to enjoy with respect to it "guaranties equally ample as if the same belonged to citizens of the United States." 9 Stat. 922, 929, 930; 10 Stat. 1031, 1035. While claimants under grants made by Mexico or the Spanish authorities prior to the cession had no right to a judicial determination of their claims, Congress, nevertheless, might provide therefor if it chose to do so. *Astiazaran* v. *Santa Rita Land and Mining Co.*, 148 U. S. 80. And it was for this purpose that the act of March 3, 1891, was passed, establishing the Court of Private Land Claims for the settlement of claims against the United States to lands "derived by the United States from the Republic of Mexico, and now embraced within the Territories of New Mexico, Arizona, or Utah, or within the States of Nevada, Colorado, or Wyoming."

The argument is that the court thus created, composed of judges holding office for a time limited, is not one of the courts mentioned in article 3 of the Constitution, whereby the judicial power of the United States is vested in one Supreme Court and in such inferior courts as Congress may from time to time establish, the judges of which hold their offices during good behavior, receiving at stated times for their services a compensation that cannot be diminished during their continuance in office, and are removable only by impeachment; and that the appellate power of this court cannot be extended to the revision of the judgments and decrees of such a court. Granting that the Court of Private Land Claims does not come within the third article, the conclusion assumes either that the power of Congress to create courts can only be exercised in virtue of that article, or, that judicial tribunals otherwise established cannot be placed under the supervisory power of this court.

It must be regarded as settled that section 1 of article 3 does not exhaust the power of Congress to establish courts. The leading case upon the subject is *American Insurance Co.* v. *Canter,* 1 Pet. 511, 546, in which it was held in respect of territorial courts, Chief Justice Marshall delivering the opinion, that while those courts are not courts in which the judicial power conferred by article 3 can be deposited, yet that they are legislative courts created in virtue of the general right of sovereignty which exists in the government over the Territories, or of the clause which enables Congress to make all needful rules and regulations respecting the territory belonging to the United States. The authorities are referred to and commented on by Mr. Justice Harlan in *McAllister* v. *United States,* 141 U. S. 174.

The case before us relates to the determination of a claim against the United States to lands situated in the Territory of Arizona, and, as it was clearly within the authority of Congress to establish a court for such determination, unaffected by the definitions of article 3, the question is not presented whether it was within the power of Congress to create a judicial tribunal of this character for the determina-

tion of title to property situated in the States, where the courts of the United States, proper, are parts of the Federal system, "invested with the judicial power of the United States expressly conferred by the Constitution, and to be exercised in correlation with the presence and jurisdiction of the several state courts and governments." *Hornbuckle* v. *Toombs*, 18 Wall. 648, 655.

And as wherever the United States exercise the power of government, whether under specific grant, or through the dominion and sovereignty of plenary authority as over the Territories, *Shively* v. *Bowlby*, 152 U. S. 1, 48, that power includes the ultimate executive, legislative, and judicial power, it follows that the judicial action of all inferior courts established by Congress may, in accordance with the Constitution, be subjected to the appellate jurisdiction of the supreme judicial tribunal of the government. There has never been any question in regard to this as applied to territorial courts, and no reason can be perceived for applying a different rule to the adjudications of the Court of Private Land Claims over property in the Territories.

The motion to dismiss is

*Denied.*