In re ENERGY COOPERATIVE, INC., Debtor.

ENERGY COOPERATIVE, INC., Plaintiff,

and

Continental Illinois National Bank and Trust Company of Chicago, individually and as agent for St. Louis Bank for Cooperatives, Seattle First National Bank, First National Bank of Minneapolis, First National Bank and Trust Company of Oklahoma City, Bank of Montreal (California), and the First National Bank of Boston, Intervening Plaintiff,

v.

FARMERS UNION CENTRAL EXCHANGE, INC., Farmers Petroleum Cooperative, Inc., FCX, Inc., Landmark, Inc., Land O'Lakes, Inc., Midland Cooperatives, Inc., MFA Oil Company and Tennessee Farmers Cooperative, Defendants.

Bankruptcy No. 81 B 5811.
Adv. No. 81 A 3286.

United States Bankruptcy Court, N. D. Illinois, E. D.

Feb. 1, 1982.

2. In fact, the payments made by the plaintiffs have not come within $340.40 of paying the balance due down to $1,065.00.

Allan G. Sweig of Nachman, Munitz & Sweig, Chicago, Ill., for plaintiff Energy Cooperative, Inc.

Milton L. Fisher of Mayer, Brown & Platt, Chicago, Ill., for intervening plaintiffs.

H. Blair White of Sidley & Austin, Chicago, Ill., for defendants.

MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause comes to be heard on two motions. Defendant's motion to dismiss and plaintiffs' motion for summary judgment. Briefs by all parties on both motions, as well as affidavits in support of, and in opposition to, the motion for summary judgment were submitted.

Defendants move to dismiss on two grounds. The first ground for dismissal urged by defendants is that the jurisdictional grant of the Bankruptcy Reform Act of 1978 empowering bankruptcy court judges to exercise jurisdiction over cases arising

under or related to a case under Title 11 violates the due process clause of the United States Constitution. The second ground for defendants' motion is that the plaintiff in this cause has failed to join all the feasible parties pursuant to Bankruptcy Rule 719.

Plaintiffs move for summary judgment on their adversary complaint on the ground that a "Member Subscription Agreement" compels contribution by defendants as a matter of law, in the event that debtor, Energy Cooperative's current liabilities exceed its current assets. In support thereof, the plaintiffs have submitted an affidavit to the effect that the conditions necessary to compel contribution by the defendants have been met.

## I

### CONSTITUTIONALITY OF 28 U.S.C. § 1471

The main issue raised in defendants' motion to dismiss is whether 28 U.S.C. § 1471 is constitutional. Section § 1471 grants jurisdiction of all civil proceedings arising under or related to cases which arise under Title 11 to the district courts, to be exercised by the Bankruptcy Court for that district. This issue is presently before the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, and *United States v. Marathon Pipeline Co.* The Court noted probable jurisdiction over the above cases on November 9, 1981. —— U.S. ——, 102 S.Ct. 564, 70 L.Ed.2d 472.

Defendants argue that allowing Bankruptcy Courts to exercise the delegation of judicial power under 28 U.S.C. § 1471 violates due process requirements of the Constitution for various reasons. In support of their position, defendants refer this court to the district court opinion in *Marathon Pipeline Co. v. Northern Pipeline Construction Co.*, 12 B.R. 946, 7 B.C.D. 1373, CCH Bk.L. Rptr. ¶ 68,268, 4 CBC 2d 425 (D.C.D.Minn., 1981). In *Marathon*, Judge Lord held that the broad jurisdictional grant of the Code, coupled with the power of the Bankruptcy Courts under it to hold jury trials, punish by fine and imprisonment, and issue writs of habeas corpus, jeopardizes the independence of the entire judiciary when exercised by judges without tenure and salary protection. *Marathon*, 7 B.C.D. at 1375.

In his opinion the distinguished district judge holds that a litigant in a bankruptcy proceeding is entitled to have an article III judge decide his cause, and that a judge without the protections afforded by article III is subject to extraneous influences thereby distorting his objectivity. A more practical evaluation of these assumptions is addressed more fully herein. It is noted however, that in *Marathon* there is no reference made to surrounding circumstances considered by Congress in the establishment of the United States Bankruptcy Court. A most compelling reason for its creation was the alarming increase in the civil filings in the district courts as well as the even greater increase in bankruptcy court filings. Furthermore, the filings in the United States Bankruptcy Court have increased by over 50% in the last two years. The number of filings in the Bankruptcy Court is twice that of the district court, which already approaches its functional limit. See footnote 1, *infra*.

The decision of Judge Lord in *Marathon*, would invalidate tens of thousands of orders entered by bankruptcy court judges in the Northern District of Illinois alone over the last two years. It would also invalidate court ordered transfers of millions and perhaps billions of dollars in property values. Finally, what does not appear to be considered by Judge Lord in *Marathon* is how the district courts, already suffering backlogs of cases delaying their disposition in some instances for years, are prepared to exercise the jurisdiction conferred by 28 U.S.C. § 1471 and thereby increase the case loads in district courts nationwide by approximately 200%!

In the absence of evidence in the *Marathon* case that any of the practical considerations noted above were evaluated parallel to the possibility that judicial authority might have been improperly delegated, this court must conclude that *Marathon* itself is of limited value as precedent.

The essence of defendants' argument is that only the article III district court may constitutionally exercise that federal question jurisdiction incorporated in the grant in 28 U.S.C. § 1471 and 28 U.S.C. § 1481. To determine whether such a constitutional constraint exists, this court must necessarily determine under what authority Congress sought to establish the Bankruptcy Courts, and whether "due process" is infringed by the Congressional delegation of jurisdiction to the Bankruptcy Courts.

Congress has the power to establish courts inferior to the Supreme Court under both article III and article I of the Constitution. U.S.Const. art. III, § 1, U.S.Const. art. I, § 8, cl. 9. The Judges of inferior courts established under article III hold their offices during good behavior and receive an undiminishable salary during their continuance in office. U.S.Const. art. III, § 1. Since Congress created the bankruptcy court judgeships without the tenure and salary protections of article III judges, it did so by exercising its article I power to create legislative tribunals which are not entitled to those article III protections. This conclusion is implied from prior instances where Congress has created non-article III "courts" under the auspices of article I, § 8, cl. 9. *Dynes v. Hoover*, 61 U.S. (20 How.) 65, 15 L.Ed. 838 (1858) (military courts); *United States v. Coe*, 155 U.S. 76, 15 S.Ct. 16, 29 L.Ed. 76 (1894) (court of private land claims); *Stephens v. Cherokee Nation*, 174 U.S. 445, 19 S.Ct. 722, 43 L.Ed. 1041 (1899) (Choctaw and Chickasaw citizenry court); *In re Ross*, 140 U.S. 453, 11 S.Ct. 897, 35 L.Ed. 581 (1891) (consular courts); *Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901) (unincorporated district courts); *Continental Equities, Inc. v. Commissioner*, 551 F.2d 74 (1977) (tax court).

The United States Bankruptcy Courts were created by Congress in Pub.L.No. 95–598 codified in 28 U.S.C. § 151(a), in which they were characterized as an "adjunct" to the district courts. The tenure of Bankruptcy Judges was established for terms of 14 years. Provisions were made for their removal based upon incompetency, misconduct, neglect of duty, or physical or mental disability in 28 U.S.C. § 153(b). It is noted that these are the same standards for removal of federal magistrates.

Defendants have urged this court to reserve ruling on the issue of the constitutionality of 28 U.S.C. § 1471 pending the disposition of the *Marathon* cause by the United States Supreme Court. Judicial notice is taken of the fact that it is possible the Supreme Court may find it unnecessary to reach this issue in deciding *Marathon*. Further, the holding of the district court in Minnesota in *Marathon* can create confusion in the orderly administration of bankruptcies in this district. Therefore it is necessary now to rule on the issue of the constitutionality of the jurisdiction of the United States Bankruptcy Courts.

When attempting to interpret an Act of Congress, it is presumed that "... every indulgence must be entertained in favor of constitutionality where the legislation can be fairly deemed an exercise of the discretion, in the formulation of policy, given to Congress by the constitution." *National Mutual Insurance Co. v. Tidewater Transfer Co., Inc.*, 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949). It is also persuasive that Congress was informed of the constitutional ramifications and considerations when it delegated authority to exercise the jurisdiction conferred on the District Courts to an article III adjunct thereof. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 23 (1978), U.S.Code Cong. & Admin. News 5787, 5984; S.Rep. No. 989, 95th Cong., 2d Sess. 15 (1978); [1978] U.S.Code Cong. & Admin.News 5801; 1 Collier on Bankruptcy, ¶ 1.03 (15th Ed., 1981). Congressional awareness of competing constitutional values resulting from vesting decision making power in the district courts of non-article III magistrates figured prominently in the Supreme Court's affirmance of the Federal Magistrate's Act. *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), ren. den. 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980). In accordance with this presumption of consti-

tutionality for acts of Congress, *United States v. Vuitch*, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), particularly where Congress has solicited opinions and considered the very issue now raised, constitutionality must be affirmed absent compelling language or precedent to the contrary.

■ Two issues raised by defendants' motion are whether this article I court was created pursuant to article I, § 8 and whether it may exercise the jurisdiction conferred by Congress upon the district courts in 28 U.S.C. § 1471. The first issue is satisfied by Congressional power to enact laws on the subject of bankruptcies (art. I, § 8, cl. 4). The second necessitates an inquiry as to whether similar jurisdiction which has been conferred upon other article I courts has been found to be constitutional.

■ In *American Insurance Co. v. Canter*, 1 Pet. 511, 7 L.Ed. 242 (1828), Mr. Chief Justice Marshall held that the non-article III territorial courts of Florida could hear cases governed by admiralty and maritime law in addition to local controversies, even though those cases were ordinarily heard only by article III judges. *Canter* at 546. This case represented an early understanding that article III matters may be heard out of necessity by non-article III courts. It is now irrefutable that article I territorial courts may exercise jurisdiction concurrent with the federal district courts and are subject to the appellate jurisdiction of the Supreme Court. *Benner v. Porter*, 9 How. 235, 243, 13 L.Ed. 119 (1850); *Clinton v. Englebrect*, 13 Wall. 434, 447, 20 L.Ed. 659 (1872); *Balzac v. Porto Rico*, 258 U.S. 298, 312, 42 S.Ct. 343, 348, 66 L.Ed. 627 (1922). The Supreme Court recently upheld the congressional ability to delegate federal criminal jurisdiction to the article I courts in the District of Columbia. *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed. 342 (1973). In *Palmore* the court held that an article III judge is not required to preside over every proceeding in which charge, claim or defense is based on Act of Congress or law made under its authority.

*Palmore*, 411 U.S. at 400, 93 S.Ct. at 1677. Congress may also bring state claims within the purview of article III courts if it finds such review necessary to the effective implementation of its constitutional duties. *Schumacher v. Beeler*, 293 U.S. 367, 79 L.Ed. 433, 55 S.Ct. 230 (1934). *Williams v. Austrian*, 331 U.S. 642, 657, 91 L.Ed. 1718, 67 S.Ct. 1443 (1947) (upholding the justiciability of adversary complaints under the Bankruptcy Act in the district courts). The framers of the Constitution must have anticipated that flexibility was necessary to the accomplishment of the duties entrusted to Congress under the Constitution. It is clear from the previous cases that Congress is empowered to create legislative courts where necessary and proper, pursuant to its obligation under an empowering clause in article I. Congress may also confer upon those courts jurisdiction concurrent with, and perhaps greater than, that jurisdiction conferred on article III courts. *Palmore*, 411 U.S. at 407. Since Congress may confer on an article I court jurisdiction commensurate with that under 28 U.S.C. § 1471, this court finds the delegation of authority from Congress to the Bankruptcy Courts to be *prima facie* constitutional.

Defendants contend that the bankruptcy court's exercise of jurisdiction within the districts violates due process. It has been demonstrated, however, that those rights are not violated when similar jurisdiction is exercised by a territorial court. In each instance the federal rights of the parties are being determined in a case presided over by a non-article III judge, making final determinations of law and fact. The constitutional imperative of due process is applicable in both situations.

Defendants argue that the power of Congress to confer concurrent jurisdiction on the territorial courts is justified by the fact that the national government must also act as an independent sovereign for those limited geographic areas. This argument fails to explain why the rights of due process guaranteed to every person by the Fourteenth Amendment should differ between persons residing in a territory and a citizen

of one of the several states. If the deprivation of an article III judge violated the due process rights of the state citizen, it would also violate the due process rights of a person residing in one of the territories. The necessary implication from the holding in *Palmore*, and other cases upholding the constitutionality of article I territorial courts, is that an article I forum pursuant to an empowering clause does not *per se* offend the due process rights of the parties before it. A further showing of how the article I forum has in fact denied due process to a party is incumbent upon the movant.

Where Congress in the exercise of its power under article I finds it necessary to provide those affected with access to a court or tribunal for the determination of controversies, it *may* open the regular federal courts to them. *National Mutual Insurance Co. v. Tidewater Transfer Co., Inc.*, 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949). Further, Congress may delegate the initial exercise of its article I power to a non-article III tribunal subject to review by the federal district courts. *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). The decision of which avenue is more expeditious is left to the discretion of Congress.

■ Speaking to the first element of the constitutional issue raised by defendants, this Court does not find the breadth of jurisdiction exercised by the Bankruptcy Courts in 28 U.S.C. § 1471 different than that conferred upon article I territorial courts. Nor is the fact that Congress chose to confer upon the article III courts appellate review powers rather than primary responsibility to exercise the jurisdiction *prima facie* offensive to the litigants' rights of due process, in light of other examples of congressional delegation of primary responsibility for adjudication of rights to article I tribunals.

■ The difference between the Bankruptcy Court and the various other article I courts previously mentioned is one of degree rather than of kind. Congress may establish nationwide article I courts of lim-

ited jurisdiction. *Continental Equities, Inc. v. C.I.R.*, 551 F.2d 74 (5th Cir., 1977); *United States v. Coe*, 155 U.S. 76, 15 S.Ct. 16, 29 L.Ed. 76 (1894). Congress may also create article I courts of general jurisdiction, hearing cases involving federal law questions as well as those resolved solely on the basis of local law. *National Mutual Insurance Co. v. Tidewater*, 337 U.S. 582, 590, 69 S.Ct. 1173, 1177, 93 L.Ed. 1556 (1949); *Kendall v. United States ex rel. Stokes*, 12 Pet. 524, 619, 9 L.Ed. 1181 (1838); *Capital Traction Co. v. Hof*, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1899). It would be incongruous to say that Congress cannot create a nationwide article I court with power to exercise jurisdiction over types of cases already heard by other article I courts. The power to delegate to this new forum is implied by the constitutionality of its predecessors. The jurisdiction exercised is limited to *civil* proceedings arising under or related to cases which arise under Title 11. The problems inherent in a non-article III judge adjudicating the rights of a criminal defendant are not at issue here. *Cf. United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). The Bankruptcy Court's inability to adjudicate federal or state criminal law actions is a major limitation and bears emphasis. Furthermore, the bankruptcy courts are not an alternative forum in which to adjudicate any civil case. Each case must itself arise under the Bankruptcy Act or relate to a prior case so arising. Therefore, although broader than under the previous act, the jurisdictional grant exercised by the bankruptcy courts under the Code is limited. It is certainly less than that of either the territorial courts or the state courts. There is no reason to presume that the Constitution denies to Congress the right to accomplish through a single efficient court system that which the Constitution mandates Congress to do in article 1, § 8, cl. 4.

It is important to note that the United States Bankruptcy Courts are not a device by Congress in an attempt to usurp the jurisdiction of the District Courts. The District Courts have seen an increase in the

number of civil filings from approximately 35,000 in 1950 to 180,000 in 1981.[1] There is no dearth of cases to occupy the article III courts of this nation. The 180,000 civil cases filed in 1981 in the District Courts do not include the more than 363,000 civil filings in the United States Bankruptcy Courts during fiscal year 1981.[2] These are the cases which defendants argue must be adjudicated by already overburdened article III courts, and would represent more than a 200% increase in the district courts' caseloads!

Congress recognized the alarming increase per year in all court filings and acted to avert an avalanche which would paralyze the federal court system. The United States Bankruptcy Courts under the Bankruptcy Reform Act of 1978 have efficiently managed a caseload which has increased by over 50% in two years.[3] Such a successful effort by Congress cannot be lightly overturned without a clear showing of its repugnancy to the Constitution.

To determine whether the procedures established in the Bankruptcy Reform Act of 1978 offend a party's due process rights, this court must determine what process is due and what protections are afforded under the Code. The guarantees of due process require a "hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Three factors are to be considered when determining whether the flexible concepts of due process have been satisfied in a particular hearing. *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). See also *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

The first factor to be considered is the private interest implicated in the cause. The litigants' property rights, which are routinely decided by judges without the tenure and salary protections of article III are those interests which are implicated in a bankruptcy proceeding.

The second factor is the risk of an erroneous determination by reason of the due process accorded to the parties. In a bankruptcy proceeding, the risk is no greater than that in an article III court. Bankruptcy Court procedures are governed by 28 U.S.C. § 2075, which empowers the Supreme Court to prescribe by general rules the forms of process, writs, pleadings, motions and practice and procedure in cases under Title 11. Further, the Federal Rules of Evidence shall apply in proceedings before the United States Bankruptcy Court. Fed.R.Evid: 1101(b). The final procedural safeguard which Congress has incorporated into the Bankruptcy Reform Act of 1978 is the right of a party to appeal from all final judgments, orders and decrees of Bankruptcy Courts, either to the district court for the district in which the Bankruptcy Court sits, 28 U.S.C. § 1334, to panels designated under 28 U.S.C. § 160(a), 28 U.S.C. § 1482, or by agreement directly to the Court of Appeals for that district, 28 U.S.C. § 1293. The district courts and panels are also authorized to hear appeals from interlocutory judgments, orders and decrees of the Bankruptcy Courts, 28 U.S.C. §§ 1334(b), 1482(b). The process afforded parties before this court is commensurate with that afforded parties before any article III court and the probable value of additional procedural safeguards is minimal.

The third factor is a balancing of the administrative burdens, including the cost of additional procedures with the public interest in them. The overwhelming administrative burden which would result from compelling the district courts to be the primary exerciser of jurisdiction under the Bankruptcy Reform Act of 1978 was the major reason its draftsmen created the United States Bankruptcy Courts adjunct. H.R.Rept.No.595, 95th Cong., 2d Sess. 46 (1978), [1978] U.S.Code Cong. & Admin.

---

1. Chief Justice Warren Burger in speech before American Bar Association, Jan. 24, 1982, Chicago, Illinois.

2. Administrative Office, Washington, D.C. Oct. 1, 1980—Sept. 30, 1981 total filings.

3. Id.

News 6007–08; S.Rep.No.989, 95th Cong., 2d Sess. 17–18 (1978); 1 Collier on Bankruptcy ¶ 1.03 at 1–10 (15th Ed., 1981). After soliciting opinions on this very issue, Congress decided not to continue the previous system whereby all adversary proceedings were brought before an article III judge, often requiring that judge to familiarize himself with the entire proceeding. A determination of Congress, that an article I forum for article III questions is necessary to alleviate unmanageable case loads in the district courts and promote the trial and disposition of matters of both local and national concern is entitled to great weight when determining whether a party's due process has been infringed, *Palmore v. United States*, 411 U.S. 389, 404, 93 S.Ct. 1670, 1679, 36 L.Ed. 342 (1973).

Accordingly, the argument made by the defendants is inadequate to overcome the presumption of constitutionality of 28 U.S.C. § 1471, in light of the precedents cited and giving every indulgence in its favor. Accord see *In re Segarra*, 14 B.R. 870, 8 B.C.D. 339, 5 C.B.C.2d 552, CCH Bk.L.Rptr. ¶ 68,390 (B.C.D.C.P.R., 1981).

## II

## JOINDER OF ALL PARTIES

Defendants in their motion to dismiss allege a failure on the part of the plaintiffs to join all necessary parties pursuant to Bankruptcy Rule 719. Rule 719 provides in part:

### JOINDER OF PERSONS NEEDED FOR JUST DETERMINATION

(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the proceeding if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the proceeding and is so situated that the disposition of the proceeding in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.... [Bankruptcy Act Rule 719]

Defendants also contend that under Bankruptcy Rule 717 every action must be prosecuted in the name of the real party in interest. Moreover, defendants argue that serious questions exist with respect to Continental Bank's status as a real party in interest to file and pursue its complaint in intervention as "agent" on behalf of each of the banks claiming under the Member Subscription Agreement. Defendants' motion therefore raises three separate issues. First, whether intervening plaintiff Continental has the capacity to sue as agent for each of the named principals. Second, whether the appearance by an agent for its principal satisfies the real party in interest rule. Third, whether all the feasible parties have been joined in the present cause.

The first issue is readily disposed of. Continental has intervened as plaintiff, and as agent for each of the named principal banks.

... When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.... [Fed.R. Civ.P. 9(a)]

▬ The assertion by defendant that "serious questions exist with respect to Continental Bank's status" is not a specific negative averment. Therefore, the capacity of Continental to sue as agent for the named principals is not in question.

▬ Further, all the banks named by plaintiff Continental National Bank of Illinois (hereinafter Continental) as its principals have knowledge or notice that Conti-

nental in its intervening complaint asserts authority to act as the agent for each. No objection by any of the named banks to Continental's assertion of authority has been brought before this court. Continental therefore has apparent authority to act as the agent of each of the named banks and to bind them as their agents. N. Edward Sell, *Sell on Agency*, 25–26 (1975).

■■■■■ Having appeared as plaintiffs before this court through their agent, the named plaintiff banks will not be heard to deny this court's jurisdiction over them. The equity power of this court prevents a principal from impliedly ratifying the actions of its agents to its benefit and thereafter denying the relationship if the actions taken are to its detriment. Continental will continue as agent for each of the named principal banks until the agency relationship has been terminated and brought to this court's attention. Having attained jurisdiction over the principal banks through their intervening complaint filed by their agent, this court will continue to exercise that jurisdiction despite any change in the various agency relationships.

■■■■■ Defendants also allege that the intervention by Continental as agent for the named principals violates Bankruptcy Rule 717 compelling actions to be brought in the name of the real party in interest. The "real party in interest" rules have come under severe criticism. See Kennedy, Federal Rule 17(a): Will the Real Party in Interest Please Stand?, 1967, 51 Minn.L. Rev. 675, 724. Disregarding the propriety of the rule itself, it is in any event satisfied here by the appearance of Continental as "agent for" its *named* principals. The purpose of the real party in interest rule is to enable the defendant to present his defenses against the proper persons, to avoid subsequent suits and to proceed to finality of judgment. *Rackley v. Board of Trustees of the Orangeburg Regional Hospital,* 35 F.R.D. 516, 517 (D.C.S.C., 1964). All of these objectives are met by the appearance

of Continental as the agent for its disclosed principals.

■■■ The final issue raised by defendants is that the adversary complaint fails to join all feasible parties pursuant to Bankruptcy Rule 719(a). As noted above this court has jurisdiction over each of the parties named in the complaint by virtue of their appearance through their agent Continental. Furthermore dismissal of this adversary complaint would be unwarranted in any case before this court since defendants by counterclaim have the power to join all the plaintiff-principals.

## III

## SUMMARY JUDGMENT

The second motion under consideration in this memorandum is plaintiff's motion for summary judgment. The adversary complaint alleges that on September 6, 1978 defendants, member-owners, and debtor, Energy Cooperative, Inc. (ECI), entered into a Member Subscription Agreement. Under this agreement, the defendants agreed to subscribe for such amounts of ECI's $100 par value preferred stock as was necessary to enable ECI to meet its obligations and covenants to the Continental Illinois National Bank and Trust Co. of Chicago, Seattle First National Bank, First National Bank of Minneapolis, First National Bank and Trust Company of Oklahoma City, Bank of Montreal and The First National Bank of Boston ("intervening plaintiffs"). The adversary complaint further alleges that the defendants have breached the Member Subscription Agreement and pray for relief from each defendant in the following amounts:

| Defendant Member-Owner | Amount Claimed |
|---|---|
| Farmers Union Central Exchange, Inc. | $24,986,100 |
| Farmers Petroleum Cooperative, Inc. | 5,665,200 |
| FCX, Inc. | 9,197,100 |
| Landmark, Inc. | 25,873,600 |
| Land O'Lakes, Inc. | 18,335,300 |
| MFA Oil Company | 19,335,800 |
| Midland Cooperatives, Incorporated | 50,294,800 |
| Tennessee Farmers Cooperative | 10,715,000 |

Plaintiff ECI moves for summary judgment on its complaint on December 15, 1981 and in support thereof, filed the affidavit of Alex Knopfler, C.P.A., in which it is his sworn testimony that he has reviewed ECI's financial statements and its books and records containing information regarding its current assets and current liabilities for the calendar quarters ended December 31, 1980, March 31, 1981 and June 30, 1981. Further, affiant swears that it is his conclusion that ECI's current liabilities exceeded its current assets for the calendar quarters ended December 31, 1980, March 31, 1981, and June 30, 1981 by $18,267,000, $32,913,000, and $164,436,000, respectively.

Counsel for all of the defendants filed an affidavit pursuant to Fed.R.Civ.P. 56(f) on January 12, 1982. The affidavit states *inter alia* that facts regarding the execution of the Member Subscription Agreement are in dispute and cannot be presented by affidavit.

This court may not grant a motion for summary judgment whenever it finds the existence of a genuine issue of material fact. *Adickes v. S. H. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *Accord, Medical Laboratory Automation, Inc. v. Labcon*, 670 F.2d 671 (7th Cir., 1981).

The possibility of factual disputes inherent in the execution and interpretation of written contracts is proper for judicial notice. When determining the propriety of granting a motion for summary judgment affidavits of the movant shall be strictly construed and those of the party opposing shall be liberally construed, after which any doubts as to the propriety of granting the motion should be resolved in favor of the non-moving party. *Adickes, supra, accord. Corwin v. Los Angeles Newspaper Service Bur., Inc.*, 4 Cal.3d 842, 857, 94 Cal.Rptr. 785, 790, 484 P.2d 953, 958 (1971). Construing the movant's affidavits strictly this court finds genuine issues of material fact regarding the execution of and the interpretation intended for the Member Subscription Agreement.

Therefore, plaintiffs' motion for summary judgment should be denied without prejudice to its being renewed after further discovery.

Plaintiff shall file a draft order consistent with this opinion and containing the briefing and pretrial schedule set forth in the minute order heretofore entered January 13, 1982, within 5 days hereof.