In re **HOME AMERICA T.V.–APPLIANCE–AUDIO, INC., Debtor.**

**Wenda K. SHALTRY, Trustee, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV 94–990 PHX RCB,
CIV 94–991 PHX RCB.
Bankruptcy No. B–89–8322 PHX RTB.

United States District Court,
D. Arizona.

April 18, 1995.

Janet Napolitano, United States Attorney, Phoenix, Arizona and Eric Casper, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for the United States.

Gerald L. Shelley and Benjamin R. Norris, Quarles & Brady, Phoenix, Arizona, for Wenda K. Shaltry, Trustee.

BROOMFIELD, Chief Judge.

The United States appeals the bankruptcy court's entries of judgment for the Trustee in two adversary proceedings. The court heard oral argument on April 10, 1995 and now rules.

## I. FACTS AND PROCEDURAL BACKGROUND

This case is about net operating losses ("NOLs"). NOLs are created when a taxpayer's deductible business expenses for a given year exceed its gross income for the year. 26 U.S.C. § 172(c). The Internal Revenue Code permits a taxpayer to carry the loss back to each of the three taxable years preceding the year the NOLs are sustained. *Id.* § 172(b)(1)(A), (b)(2). If any losses remain at the end of the three-year carryback period, they carry over for the next fifteen years from the year in which the loss occurred. *Id.* § 172(b)(1)(B). Alternatively, the taxpayer can elect to forego the carryback period and use the NOLs exclusively for future years. *Id.* § 172(b)(3)(C). "Such election, once made for any taxable year, shall be irrevocable for that taxable year." *Id.*

Prior to March 31, 1989, Maryland Investments, Inc. ("Maryland") owned 75% of the voting stock of Home America T.V. Appliance Audio, Inc. ("Home America"). On March 31, 1989, Maryland purchased the remaining 25% of Home America's voting stock.

On September 6, 1989, Home America's creditors filed an involuntary petition under Chapter 7 of the Bankruptcy Code against Home America. The Trustee was appointed on September 20, 1989.

On September 19, 1989, after the Chapter 7 petition had been filed but before the Trustee had been appointed, Maryland filed a consolidated federal income tax return on behalf of itself and Home America for the taxable year ending June 30, 1989. The return included Home America's activity during the period in which it was Maryland's wholly-owned subsidiary, April 1, 1989 through June 30, 1989.

Maryland's authorization to file that type of return stemmed from those portions of the Internal Revenue Code permitting a common parent of an affiliated group of corporations to file consolidated returns when certain conditions are met. *See* 26 U.S.C. § 1501–1504; *Yorkshire v. U.S. I.R.S.,* 26 F.3d 942, 945 (9th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 487, 130 L.Ed.2d 399 (1994). One of those conditions is that the subsidiary corporation consent to the filing of a consolidated return on its behalf. 26 C.F.R. § 1.1502–75; *In re Prudential Lines, Inc.,* 928 F.2d 565, 569 (2d Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991). The Treasury Regulations further provide that once an affiliated group has consented to file a consolidated return, it must seek permission from the Commissioner to discontinue filing consolidated returns. 26 C.F.R. § 1.1502–75(c).

The parties do not dispute that Home America consented to the filing of a consolidated return by its vice president and chief financial officer executing a Form 1122 "Authorization and Consent of Subsidiary Corporation to be Included in a Consolidated In-

come Tax Return," which was attached to Maryland's 1989 tax return. Also attached to the return was a document entitled "Election to Relinquish the Net Operating Loss Carryback Period." By that election, Maryland exercised its authority under 26 U.S.C. § 172(b)(3) to forgo the right to carryback NOLs for the taxable year 1989.

Home America's NOLs for the taxable year in question was approximately $1.6 million. The chapter 7 petition filed against Home America ultimately caused Home America to liquidate. Thus, the effect of Maryland's election to forego the carryback period was to prevent Home America from ever enjoying the benefit of its NOLs. Instead, because Home America was being liquidated, Home America's NOLs could only be used to offset Maryland's future income.

As indicated above, Home America's Trustee was appointed the day after Maryland filed its consolidated return. On May 24, 1991, the Trustee filed amended tax returns on behalf of Home America for the taxable years ending June 30, 1986, June 30, 1987 and June 30, 1989. The amended returns revoked Home America's election to file a consolidated return with Maryland and sought to carryback Home America's NOLs to generate a refund of $1,610,761.00. The Trustee also sought a prompt determination of the amended returns under 11 U.S.C. § 505(b).

On September 17, 1991, the Internal Revenue Service District Director sent the Trustee a letter which provided in its entirety, "In reply to your request for a prompt audit of the income tax return identified above, we are pleased to tell you your return has been accepted as filed."

On September 24, 1991, the Trustee filed Adversary Complaint No. 91–896 naming the Internal Revenue Service ("IRS") as the defendant. The Trustee sought relief under Arizona state law and 11 U.S.C. § 548, which provides a mechanism for a trustee to avoid fraudulent transfers. The Trustee alleged in the Adversary Complaint that the election to file a consolidated return and forego the carryback of NOL constituted an improper transfer avoidable under Section 548.

On October 18, 1991 the Trustee wrote a letter to the IRS requesting a written response as to when the Trustee could expect to receive the refund and what additional steps the Trustee would need to take before the refund would issue. On November 4, 1991, an IRS agent wrote back and stated that while "[i]t is difficult to say precisely how long it will be until you receive the refunds ... I am estimating a minimum of six months...."

On November 14, 1991, an attorney with the tax division of the Department of Justice sent a letter to the Trustee's lawyer indicating that she had received a copy of the Adversary Complaint. The letter stated that the Internal Revenue Service could not be named as a defendant and that the correct party to the lawsuit was the United States. The letter also stated that the government had not properly been served under Bankruptcy Rules 7004(b)(4), (5). The letter added that until the Trustee complied with the Bankruptcy Rules' service requirements, the Government would decline to respond to the Adversary Complaint. The Trustee did not attempt to cure the service errors at that time because, she asserts, her prior correspondences with the IRS had led her to believe that the refund was forthcoming and that prosecuting the lawsuit would not be necessary.

On December 18, 1991, IRS Revenue Agent Craig Jones sent the Trustee a letter which stated that he would need to examine Home America's books and records with respect to the 1986 and 1987 taxable years. The letter also provided that, "This determination has been made notwithstanding the Letter 622 dated September 17, 1991...."

On February 3, 1992, the United States filed a motion to dismiss the Adversary Complaint, asserting that 1) the Internal Revenue Service is not a person capable of being named as a defendant, and 2) the government had not been served in the manner prescribed by the Bankruptcy Rules and the Federal Rules of Civil Procedure. Plaintiff subsequently amended her complaint to name the United States as defendant.

On February 13, 1992, the Trustee received a hand-written note from Revenue Agent Jones which stated that after reviewing certain documentation, he believed that

all the "numbers" questions had been resolved. His note went on to say that, "I talked to our attorney and they are still waiting for guidance on the technical matter on the claim. There may be a significant delay on getting that response. It may be necessary to request an extension on Home America 8903. I will contact you if that is required."

On April 23, 1992, the IRS sent the Trustee a letter stating that Home America's refund claim had been disallowed. The only stated reason for the disallowance was that "[i]t has not been proven that this is a valid claim."

On December 11, 1992, the Bankruptcy Court issued a minute entry in the Adversary Proceeding:

The Court ... finds that the Trustee has failed to establish that there was "good cause" for her failure to properly and timely serve the summons and complaint. The Trustee simply failed to serve her summons and complaint as required by statute.

The Court has made this ruling in part based on the representations of the U.S.A. that it is aware of no statute of limitations that would bar the Trustee from refiling this action. Therefore, while the Court is mindful that the U.S.A. may have other grounds for seeking dismissal of any refiled action brought by the Trustee, an argument that the Trustee's action is barred by some statute of limitations would be closely scrutinized by this Court.

On January 15, 1993, the Trustee filed a motion for reconsideration, which the Bankruptcy Court granted on June 9, 1993:

The plaintiff's/trustee's motion for reconsideration is granted and the order of dismissal will be vacated. The court finds and concludes that the IRS made certain representations that the claims, based on the amended returns, were accepted and a refund would be paid. The Court further finds and concludes that these ongoing dealings with the IRS constitute good cause for not actively pursuing the action by service of process within the allotted time.

Prior to the reinstatement of the Adversary Proceeding, the Trustee filed a second Adversary Complaint against the United States on January 12, 1993. The second Adversary Complaint purported to be a refund suit pursuant to 28 U.S.C. § 1346(a)(1), and the Trustee claimed that she was entitled to relief 11 U.S.C. §§ 548, 544, 505 & 549 as well as A.R.S. §§ 44–1004, 1005.

Motion practice proceeded in both Adversary Proceedings, and the Bankruptcy Court ultimately conducted a single hearing on the parties' cross motions for summary judgment in both cases. Six months after taking the matter under advisement, the Bankruptcy Court issued a minute entry granting the Trustee's motions, denying the government's motions and directing the Trustee to lodge appropriate judgments. The Bankruptcy Court did not set forth the basis for its ruling. On April 7, 1994, the Bankruptcy Court entered identical judgments for the Trustee in both Adversary Proceedings, finding that:

(1) The net operating losses ("NOLs") underlying the Trustee's claim for refund are property of the estate;

(2) That [sic] the debtor's consent postpetition to filing of a consolidated return with its parent, Maryland Investments, did not constitute a consent to the transfer of the NOLs to Maryland Investments enforceable against the Trustee;

(3) This action is a suit for refund, and the Government's sovereign immunity is waived by 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422;

(4) The Government is not entitled to have the Trustee's claims dismissed on the grounds that the Trustee initially cited 11 U.S.C. §§ 544 and 548, rather that § 549;

(5) The Trustee's avoidance powers under 11 U.S.C. § 549 encompass the right to reverse the debtor's otherwise irrevocable post-petition election regarding the use of net operating losses;

(6) Maryland Investments is not a necessary party to this action;

(7) The Government is not entitled to have the Trustee's claims dismissed for failure to state a cause of action under 11 U.S.C. § 550;

(8) The Government is not entitled to have the Trustee's claims dismissed on the

grounds that this action was not brought within any applicable statute of limitations;

(9) There was "good cause," as defined in Bankruptcy Rule 7004(j), in Adversary 91–896 for the decision not to serve a summons within the time generally allowed; and

(10) The Trustee has the right to set aside the elections regarding the use [of] "NOLs" as a "gap" transaction, pursuant to Bankruptcy Rules 1011 and 1013, and 11 U.S.C. § 549(b).

The Judgments also required the Government to pay the Trustee $1,610,761.00 plus interest.

The Government timely filed its Notice of Appeal.

## II. DISCUSSION

■ The Government raises a number of issues on appeal. The issue to which the parties' devote the majority of their papers is whether the Trustee's authority to set aside certain post-petition transfers under 11 U.S.C. § 549 allows the Trustee to avoid the "irrevocable" elections to file a consolidated tax return and waive the NOL carryback period. The court will not reach that issue, however, because it finds that the judgments of the Bankruptcy Court must be vacated based on a much narrower issue raised by the Government, to wit, failure to join Maryland as a party to this lawsuit.

The Government argues that the failure to name Maryland as a defendant forces the Government to defend against the Trustee's assertions that Maryland received a fraudulent transfer. More importantly, the Government maintains that if Maryland is not brought into this case, the Government is exposed to the risk of inconsistent obligations because two taxpayers might wind up with the ability to claim the benefits of Home America's NOL deductions.

The Trustee responds that Maryland is not a necessary party because this is a refund action, and the relief sought can only be provided by the Government and not another taxpayer. The Trustee next argues that failure to join Maryland as a party "did not necessarily" expose the Government to the risk of inconsistent obligations because the

Government could have protected itself by bringing in Maryland as a party. Finally, the Trustee asserts that Maryland need not be made a party to this lawsuit because it has already stated that it will abide by the outcome of this litigation.

As the parties recognize, their dispute is governed by Rule 19(a), Federal Rules of Civil Procedure.[1] The rule provides in relevant part:

(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that person be made a party.

Fed.R.Civ.P. 19(a).

■ There is no precise formula for determining whether a nonparty should be joined under Rule 19(a). *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir.1982). Instead, the determination depends on the particular facts and circumstances of a case. *Kaplan v. Intern. Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators*, 525 F.2d 1354, 1361 (9th Cir.1975). In general, "the rule should be employed to promote the full adjudication of disputes with a minimum of litigation effort." 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1602, p. 19 (1986 & 1994 Supp.). After carefully reviewing the facts of this case, the court concludes that Maryland should be joined as a party under Rule 19(a)(2).

---

**1.** Rule 19 is made applicable to adversary proceedings by Bankruptcy Rule 7019.

First, there can be no doubt that Maryland claims an interest in the litigation. Maryland previously filed an election to carry forward Home America's $1.6 million in NOLs. Because Home America subsequently liquidated, Maryland stands able to utilize the entire $1.6 million for its own future deduction. If the Government succeeds in this lawsuit, then there should be no problem in Maryland's attempt to claim such a deduction. If Home America ultimately prevails, however, the Government will be compelled to pay the $1.6 million to Home America. The Government's papers make clear that if that happens, it will not willingly permit Maryland to later claim deductions for the same sum. Thus, litigation between the Government and Maryland will undoubtedly ensue.

The possibility of Home America succeeding in this case implicates the second subpart of Rule 19(a)(2): the Government is "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Maryland is not a party to this action and thus is not bound by any judgement in it. Regardless of whether Home America prevails in obtaining the refund it seeks, nothing will prevent Maryland from attempting to use the same NOLs to offset its future income. The Government would then face additional litigation, and, if the result is contrary to that in this case, the Government could be forced to pay out an additional $1.6 million. Subjecting the Government to such a threat of double obligations is the prototypical type of situation that Rule 19 is meant to avoid. See, e.g., Pulitzer–Polster v. Pulitzer, 784 F.2d 1305, 1312 (5th Cir.1986) (Rule 19 required joinder where defendant might otherwise be forced to pay twice for same conduct); Rapoport v. Banco Mexicano Somex, S.A., 668 F.2d 667, 668 (2d Cir.1982) (Rule 19 required joinder of competing claimants to a single fund because their absence subjected lone defendant to substantial risk of incurring multiple or inconsistent obligations); United States v. Wyoming Nat. Bank of Casper, 505 F.2d 1064, 1066 (10th Cir.1974) (in suit brought by government to enforce tax levy against bank, Rule 19 joinder of creditors proper because without them bank would be subjected to substantial risk of incurring multiple or inconsistent obligations).

The Trustee's arguments to the contrary are not persuasive. First, while she asserts that the relief she seeks can be provided only by the Government, her ability to receive complete relief is the test employed under Rule 19(a)(1). Rule 19(a) requires joinder if subpart (1) or subpart (2) applies, and the Trustee does not attempt to demonstrate that subpart (2) is not applicable to the facts of this case. Even though the Trustee is not seeking monetary relief from Maryland, she is seeking to establish her right to receive the benefit of Home America's NOLs as against Maryland without naming Maryland as a party to her lawsuits, thereby exposing the Government to the possibility of having to pay the same refund twice. Rule 19(a)(2) is meant to prevent such potential unfairness and requires that the Trustee seek declaratory relief against Home America to determine their respective rights in the NOLs.

■ The Trustee's second argument is that the Government "could have protected itself by bringing Maryland in as a party." The Trustee does not expand on this argument, but she cites two cases. See In re Energy Co-op., Inc., 17 B.R. 600 (Bankr. N.D.Ill.1982); In re DiBona, 7 B.R. 798 (Bankr.E.D.Pa.1980). It is unclear to the court what procedural mechanism the Trustee believes that the Government could have followed because both of the cases she cites discuss whether a lawsuit should be dismissed for failure to join a necessary party under the Bankruptcy Rule's equivalent of Rule 19. Neither case suggests a procedure for bringing a party into a lawsuit other than by filing a motion pursuant to Rule 19, which is exactly what the Government did below. To the extent that the Trustee is arguing that the proper course for the court to take in the face of a motion to dismiss pursuant to Rule 19 is to attempt to join the necessary party rather than dismiss the lawsuit, the court agrees, and, as set forth below, it will not order that the Trustee's lawsuits be dismissed.

■ The Trustee's final argument is that joinder is not necessary because Maryland has agreed to abide by the outcome of this lawsuit. As the Government points out in its

reply brief, however, the Trustee's assertion is somewhat misleading.

On December 12, 1991, the Trustee, Maryland and other creditors of Home America executed a settlement agreement. The settlement agreement recognizes that the Trustee is pursuing a $1.6 million refund from the IRS, and it goes on to set forth a mechanism by which the proceeds of a potential refund will be distributed to the parties to the agreement, including Maryland. As part of the settlement, Maryland has agreed not to prevent the Trustee from collecting its claimed refund. Maryland has not, however, agreed that it will not later seek to deduct the same NOLs that the Trustee is now claiming.

The relevant portion of the settlement agreement provides:

9. *No Opposition to Tax Refund Claim.*

Prior to distribution to Chrysler of its share of proceeds from the Tax Refund Claim as provided in Section 2 hereof, Maryland agrees that it will take no action to prevent or impair the Trustee from collecting on behalf of the Home America Estates the full amount claimed in the Tax Refund Claim. Except as otherwise provided in the immediate preceding sentence, nothing herein shall be construed to prevent Maryland from setting forth its audit position to IRS auditors if the IRS initiates an audit of Maryland's return, or in tax deficiency proceedings, other than in Bankruptcy Court, following therefrom.

Nothing in the settlement agreement prevents Maryland from attempting to deduct Home America's NOLs in future years. Indeed, the agreement specifically permits Maryland to "set[ ] forth its audit position to IRS auditors." This term implies that Maryland will, in fact, attempt to deduct the NOLs. The settlement agreement thus lends support to the court's finding that Maryland's absence from these proceedings potentially exposes the Government to a substantial risk of incurring multiple obligations.

Because the court concludes that Maryland should be joined as a party under Rule 19(a), it must vacate the judgments of the Bankruptcy Court. On remand, the Bankruptcy Court shall require the Trustee to take all reasonable steps to join Maryland as a party within a reasonable amount of time to be determined by the Bankruptcy Court.[2] This court shall retain jurisdiction over any future appeals in this matter.

IT IS ORDERED vacating the judgments of the Bankruptcy Court in Adversary No. 91–896 and Adversary No. 93–21 and remanding this matter to the Bankruptcy Court for further proceedings consistent with this order.

IT IS FURTHER ORDERED that this court shall retain jurisdiction over any future appeals in these Adversary Proceedings.

---

**2.** Alternatively, the Bankruptcy Court can permit this lawsuit to proceed without Maryland if Maryland agrees to be bound by the results of this litigation so that the Government does not face the potential of inconsistent obligations.